Alan S. Golub, Esq.
Andrew M. Grenell, Esq.
Fein Such, Kahn & Shepard, P.C.
7 Century Drive, Suite 201
Parsippany, New Jersey 07054

*Attorneys for Plaintiff SETH DANIELS*

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SETH DANIELS,**<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**CITY OF BURLINGTON, BURLINGTON TOWNSHIP, and MICHAEL WRIGHT, JOHN DOES 1-10, and ABC COMPANIES 1-10,**<br><br>　　　　　　Defendants. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, SETH DANIELS (hereinafter "Plaintiff"), a citizen of the State of Florida who resides at the address of 20719 Broadwater Drive, Land O Lakes, Florida 34638 says:

**JURISDICTIONAL BASIS AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties to this action are citizens of different States and the amount in controversy exceeds $75,000.00.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Third Count of this complaint arises under a federal statute, 42 U.S.C.. § 1983, and thus poses a federal question.

3.     The District of New Jersey is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are municipal corporations located in the State of New Jersey.

## THE PARTIES

4.     Plaintiff is a citizen and domiciliary of the State of Florida who resides at the address of 20719 Broadwater Drive, Land O Lakes, Florida 34638.

5.     Defendant City of Burlington (hereinafter "City") is a municipality located in Burlington County, New Jersey.

6.     Defendant Burlington Township (hereinafter the "Township") is a municipality located in Burlington County, New Jersey.

7.     On information and belief, Defendant Michael Wright is a citizen and domiciliary of the State of New Jersey.

8.     Fictitious Defendants John Does 1-10 are presently unknown individuals who are employees, agents, representatives, and/or contractors of the City, Township, and/or any other public entity as that term is defined at N.J.S.A. § 59:1-3 who are liable to Plaintiff in connection with the conduct, acts, and/or omissions complained of in this Complaint.

9.     Fictitious Defendants ABC Companies 1-10 are presently unknown public entities as that term is defined at N.J.S.A. § 59:1-3 who are liable to Plaintiff in connection with the conduct, acts, and/or omissions complained of in this Complaint.

## FACTS COMMON TO ALL COUNTS

10.    On or about February 8, 2005, Plaintiff purchased the real property commonly known as 424 Lawrence Street, Burlington, New Jersey 08016 (the "Subject Property").

11.    Plaintiff owns the Subject Property in fee simple.

12. The Subject Property is located in the City.

13. At the time Plaintiff purchased the Subject Property, there was a single-family residence was located on the Subject Property (the "House").

14. At the time Plaintiff purchased the Subject Property, he rehabilitated the House at an expense of approximately $40,000.00.

15. Neither Plaintiff nor any member of his family have ever resided in the House.

16. Instead, the Subject Property was occasionally leased to tenants.

17. At all times relevant to the allegations in this Complaint, Plaintiff had a lease with tenants who were occupying the Subject Property.

18. Upon information and belief, on September 18, 2019, the uppermost portion of the chimney on the House's roof, the chimney stack, fell over.

19. The City's first responders were notified that the House's chimney stack fell over on September 18, 2019 at approximately 2:10 P.M.

20. The City's first responders arrived at the Subject Property at approximately 2:11 P.M.

21. Shortly thereafter, Ross Kownatsky, the City's Chief Code Enforcement and Zoning official, inspected the Subject Property.

22. Following his inspection, Mr. Kownatsky ordered the tenants then leasing the Subject Property to vacate the House.

23. Upon information and belief, the City has a shared services agreement with the Township.

24. Upon information and belief, as part of that shared services agreement, the Township's construction official provides their services to the City.

25. On September 18, 2019, the Township's construction official was defendant Michael Wright (hereinafter "Defendant Wright").

26. After ordering the Subject Property's tenants out of the House, Mr. Kownatsky requested Defendant Wright come to the Subject Property to inspect the House.

27. Defendant Wright conducted an inspection of the House as requested on September 18, 2019.

28. After inspecting the Subject Property, Defendant Wright determined the House should be demolished.

29. Upon information and belief, Defendant Wright directed Mr. Kownatsky to notify Plaintiff that the House was to be demolished.

30. According to Defendant Wright, the first time any contact was allegedly attempted with Plaintiff by telephone was sometime between 3:00 P.M. and 5:00 P.M. on September 18, 2019.

31. Plaintiff did not receive any communication from any Defendant on September 18, 2019.

32. A demolition was scheduled for September 19, 2021 at 8:00 AM, approximately eighteen hours after City officials first became aware the chimney stack had fallen over.

33. According to Defendant Wright, Defendant Wright issued a Notice of Imminent Hazard on September 19, 2019 at approximately 9:00 AM. A true copy of the Notice of Imminent Hazard is annexed to this Complaint as "Exhibit "A".

34. In the Notice of Imminent Hazard, the work site location is listed as the Subject Property.

35. In the Notice of Imminent Hazard, Plaintiff is listed as the Subject Property's owner in fee.

36. At all times relevant, the City had actual knowledge that Plaintiff did not reside at the Subject Premises.

37. At all times relevant, the City had actual knowledge of Plaintiff's address and emergency contact information.

38. Plaintiff's address is not listed on the Notice of Imminent Hazard.

39. The Notice of Imminent Hazard did not set forth any description of the alleged imminent hazard.

40. The Notice of Imminent Hazard ordered Plaintiff to demolish the House by September 21, 2019.

41. On September 19, 2019, the same day the Notice of Imminent Hazard was issued, at some time between 10:00 A.M. and 11:00 A.M., the House was completely demolished.

42. The State of New Jersey has adopted the Uniform Construction Code, which is codified at N.J.A.C. § 5:23-1, *et. seq.* (the "Code").

43. Emergency procedures for when a construction official deems a structure to be unsafe are set forth in the Code at N.J.A.C. § 5:23-2.32(b)(2) (the "Emergency Code Section").

44. The Emergency Code Section authorizes a construction official to order a structure demolished only when "there is actual and immediate danger of collapse or failure of a building or structure or any part thereof which would endanger life" but only after "at least 24 hours following service of notice of the pending demolition upon the owner."

45. Service of notices under the Emergency Code Section is governed by N.J.A.C. § 5:23-2.33.

46. Under N.J.A.C. § 5:23-2.33, service of notices under the Emergency Code Section are to be made personally or in a manner otherwise consistent with due process.

47. At all times relevant, Plaintiff owned the Subject Property in fee simple.

48. Plaintiff is therefore an "Owner" as defined by the Code at <u>N.J.A.C.</u> § 5:23-1.4.

49. The House was a "[s]tructure enclosed with exterior walls . . . built, erected and framed of component structural parts, designed for housing shelter, enclosure, and support of individuals . . . ."

50. The House is therefore a "Building" as defined by the Code at <u>N.J.A.C.</u> § 5:23-1.4.

51. At all times relevant, Defendant Wright was a qualified person appointed by the Township to enforce and administer the Code.

52. At all times relevant, Defendant Wright was therefore a "Construction Official" as defined by <u>N.J.A.C.</u> § 5:23-1.4.

53. Despite the Notice of Imminent Hazard ordering Plaintiff to demolish the House by September 21, 2019, Defendants had the House demolished on September 19, 2019, within hours of the Notice of Imminent Hazard being issued.

54. At no time relevant was the House or any portion of it in actual and immediate danger of collapse which would endanger human life.

55. At no time prior to ordering the House's demolition did any Defendant herein retain the services of an architect or engineer to evaluate the House.

56. Rather, in a single paragraph file memorandum dated September 19, 2019 (the "Wright Memo"), Defendant Wright concluded upon scant observations that the House "[w]as an imminent hazard to the health, safety, and welfare of the people occupying the surrounding area."

57. Nowhere in the Wright Memo did Defendant Wright conclude that there was an actual and immediate danger that the House would collapse.

58. Nowhere in the Wright Memo did Defendant Wright conclude that the threat of the House's collapse presented an actual and immediate danger to human life.

59. In fact, Defendant Wright admitted that had Plaintiff returned an alleged telephone call made to Plaintiff concerning the House's demolition, Defendant Wright would have delayed the demolition, suggesting that Defendant Wright did not believe there was an actual and immediate danger of collapse or danger to human life.

60. At no time prior to demolition of the House was plaintiff personally served with the Notice of Imminent Hazard, nor did he receive any notice of the planned demolition whatsoever.

61. Defendant Wright was responsible for ensuring Plaintiff had notice of the House's impending demolition.

62. Defendant Wright admitted that he failed to direct anyone to serve the Notice of Imminent Hazard upon Plaintiff.

63. Less than 24 hours elapsed between the time Defendants arrived at the Subject Property and the time when demolition actually occurred.

64. On December 17, 2019, the Township and City were timely served with Notices of Claim in the manner required by the Chapter 8 of the New Jersey Tort Claims Act at N.J.S.A. 59:8-1, *et. seq.* (the "TCA").

65. No settlement has been reached with any Defendant.

66. Less than two years has elapsed since Plaintiff's cause of action accrued on September 19, 2019.

67. Plaintiff is compliant with all statutory prerequisites under the TCA to bring and maintain this suit against Defendants.

## **FIRST COUNT**
(*Negligence*)

68. Plaintiff realleges all previous paragraphs of this Complaint by reference as though set forth herein verbatim.

69. While acting in his capacity as a public official, Defendant Wright had a duty to the public, including Plaintiff, to discharge his duties skillfully and to exercise his discretion reasonably and non-arbitrarily.

70. When Defendant Wright directed and caused the House to be demolished notwithstanding the absence of an actual and immediate danger of collapse which would endanger human life, he failed to discharge his duties skillfully and failed to exercise his discretion reasonably.

71. When Defendant Wright directed and caused the House to be demolished without twenty-four hours' notice (or any notice at all) to Plaintiff, he failed to discharge his duties skillfully and failed to exercise his discretion reasonably.

72. When Defendant Wright directed and caused the House to be demolished two days before the date by which he ordered Plaintiff to demolish the House in his Notice of Imminent Hazard, he failed to exercise his discretion reasonably and acted arbitrarily.

73. Defendant Wright exercised his discretion in a palpably unreasonable manner.

74. Defendant Wright did not execute or enforce the Code and/or Emergency Code Section in good faith.

75. Defendant Wright therefore breached his duty owed Plaintiff.

76. As a direct and proximate result of Defendant Wright's breaches of his duty owed Plaintiff, Plaintiff has suffered significant damages including, but in no way limited to reconstruction costs, diminution of property value, and lost rental income.

77. The City and Township are Defendant Wright's employers.

78. The City and Township are vicariously liable for any and all damages proximately caused by Defendant Wright's negligence while he was acting within the scope of his employment with the City and Township.

**SECOND COUNT**
(*Negligence Per Se*)

79. Plaintiff realleges all previous paragraphs of this Complaint by reference as though set forth herein verbatim.

80. The Emergency Code Section is applicable to all Defendants' conduct.

81. The Emergency Code Section's purpose, particularly the notice provisions, are intended to protect Plaintiff and other similarly situated individuals.

82. Defendants violated the Emergency Code Section when they caused Plaintiff's House to be completely demolished without sufficient notice to Plaintiff.

83. Defendants violated the Emergency Code Section when they caused Plaintiff's House to be completely demolished despite the absence of actual and immediate danger of collapse or danger to human life.

84. As a direct and proximate result of Defendants' violation of the Emergency Code Section, Plaintiff has suffered significant damages including, but in no way limited to reconstruction costs, diminution of property value, and lost rental income.

**THIRD COUNT**
(*Section 1983*)

85. Plaintiff realleges all previous paragraphs of this Complaint by reference as though set forth herein verbatim.

86. The Fourteenth Amendment to the United States Constitution provides that no State shall "[d]eprive any person of life, liberty, or property, without due process of law . . . ."

87. The Code and Emergency Code Section sets forth the minimum process due a property owner before structures on their real property are demolished to eliminate an actual and immediate danger of a structure's collapse that would endanger human life.

88. According to the Code and Emergency Code Section, the process due Plaintiff before the House was demolished was personal service with a notice of the pending demolition and twenty-four hours following said service before the demolition could take place so Plaintiff could have the opportunity to be heard by a Judge of the Superior Court for a stay.

89. Even if Plaintiff had been personally or otherwise served with notice, it was mathematically impossible for Plaintiff to have had twenty-four hours' notice prior to demolition because the Notice of Imminent Hazard was issued the same day that the demolition took place.

90. Even if Plaintiff had been personally or otherwise served with notice, the Notice of Imminent Hazard was fundamentally deficient because it failed to set forth: (a) a description of the alleged hazards which allegedly necessitated the House's demolition; (b) any warning whatsoever that the House would be demolished against Plaintiff's will; or (c) any warning whatsoever when the House would be demolished against Plaintiff's will.

91. When the House was demolished without any notice or opportunity to be heard, Plaintiff was deprived of property without due process of law, contrary to the Fourteenth Amendment of the United States Constitution.

92. When Defendant Wright acted to direct and cause the House to be demolished, he did so under color of state law; specifically, the Code and Emergency Code Section.

93. Defendant Wright caused the House to be demolished despite knowing Plaintiff had not received the due process in the time or manner required by the Code and Emergency Code Section.

94. Acting under color of law, Defendant Wright therefore caused Plaintiff to be deprived of the right to due process before being deprived of his property secured by the Fourteenth Amendment of the United States Constitution.

95. As a direct and proximate result of Defendant Wright's above-described actions, Plaintiff has suffered significant damages including, but in no way limited to reconstruction costs, diminution of property value, and lost rental income.

96. Defendant Wright is therefore liable to Plaintiff pursuant to 42 U.S.C. § 1983.

**FOURTH COUNT**
(*New Jersey Civil Rights Act*)

97. Plaintiff realleges all previous paragraphs of this Complaint by reference as though set forth herein verbatim.

98. The Fourteenth Amendment to the United States Constitution provides that no State shall "[d]eprive any person of life, liberty, or property, without due process of law . . . ."

99. Article 1, Paragraph 1 of the New Jersey State Constitution of 1947 provides that "All persons . . . have certain natural and unalienable rights, among which are those . . . of acquiring, possessing, and protecting property . . . ."

100. Article 1, Paragraph 1 of the New Jersey State Constitution of 1947 has been held by the Supreme Court of New Jersey to safeguard the right to due process.

101. The Code and Emergency Code Section sets forth the minimum process due a property owner before structures on their real property are demolished to eliminate an actual and immediate danger of a structure's collapse that would endanger human life.

102. According to the Code and Emergency Code Section, the process due Plaintiff before the House was demolished was personal service with a notice of the pending demolition and twenty-

four hours following said service before the demolition could take place so Plaintiff could have the opportunity to be heard by a Judge of the Superior Court of New Jersey for a stay.

103.  Even if Plaintiff had been personally or otherwise served with notice, it was mathematically impossible for Plaintiff to have had twenty-four hours' notice prior to demolition because the Notice of Imminent Hazard was issued the same day that the demolition took place.

104.  Even if Plaintiff had been personally or otherwise served with notice, the Notice of Imminent Hazard was fundamentally deficient because it failed to set forth: (a) a description of the alleged hazards which allegedly necessitated the House's demolition; (b) any warning whatsoever that the House would be demolished against Plaintiff's will; or (c) any warning whatsoever when the House would be demolished against Plaintiff's will.

105.  When the House was demolished without any notice or opportunity to be heard, Plaintiff was deprived of property without due process of law, contrary to the Fourteenth Amendment of the United States Constitution and Article 1, Section 1 of the New Jersey State Constitution of 1947.

106.  When Defendant Wright acted to direct and cause the House to be demolished, he did so under color of state law; specifically, the Code and Emergency Code Section.

107.  Defendant Wright caused the House to be demolished despite knowing Plaintiff had not received the due process in the time or manner required by the Code and Emergency Code Section.

108.  Defendant Wright's intentional actions described above deprived Plaintiff of his substantive due process rights secured by the Constitutions of the United States and the State of New Jersey.

109. As a direct and proximate result of Defendant Wright's above-described actions, Plaintiff has suffered significant damages including, but in no way limited to reconstruction costs, diminution of property value, and lost rental income.

110. Defendant Wright is therefore liable to Plaintiff pursuant to the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2c.

**FIFTH COUNT**
(*Tortious Interference with Contractual Relations*)

111. Plaintiff realleges all previous paragraphs of this Complaint by reference as though set forth herein verbatim.

112. At the time Defendants caused the House to be demolished, Plaintiff had a lease agreement with his tenants (the "Lease").

113. At all times relevant, all Defendants actually knew or should have known that Plaintiff had a Lease with the tenants in possession of the Subject Property.

114. No Defendant was a party to the Lease.

115. When Defendants caused the House to be demolished, it made it impossible for Plaintiff to continue performing under the Lease.

116. Defendants' demolition of the House therefore actually interfered with Plaintiff's Lease with his tenants.

117. Defendants' demolition of the House was intentional.

118. Defendants knew or should have known that demolishing the House was certain to interfere with Plaintiff's contractual relations with his tenants.

119. Defendants caused the House to be demolished despite there not being actual and immediate danger of the House's collapse that would endanger human life.

120. Defendants therefore caused the House to be demolished without excuse or justification.

121. Defendants therefore interfered with Plaintiff's Lease with his tenants without excuse or justification.

122. As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered significant damages including, but in no way limited to lost rental income.

WHEREFORE, plaintiff, SETH DANIELS, demands judgment against defendants, CITY OF BURLINGTON, BURLINGTON TOWNSHIP, and MICHAEL WRIGHT for:

    a.   Compensatory Damages;
    b.   Interest;
    c.   Costs;
    d.   Attorney's fees; and
    e.   Such further relief as the Court deems equitable and just.


By: */s/ Alan S. Golub*
    Alan S. Golub, Esq.


By: */s/ Andrew M. Grenell*
    Andrew M. Grenell, Esq.

Fein, Such, Kahn & Shepard, P.C.
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
*Attorneys for Plaintiff, Seth Daniels*

Dated: September 8, 2021

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

Under Local Civil Rule 11.2, the undersigned counsel for Plaintiff Seth Daniels hereby certifies that, to its knowledge, this matter is not the subject of any other action asserted by the parties herein in any court, or of any pending arbitration or administrative proceeding.

Date: September 8, 2021

                                               **FEIN, SUCH, KAHN & SHEPARD, PC**
                                               Attorneys for Plaintiff, Seth Daniels

                                               By: */s/ Alan S. Golub*
                                               Alan S. Golub

                                               7 Century Drive, 2nd Floor
                                               Parsippany, New Jersey 07054
                                               Tel: 973.538.4700
                                               Fax: 973.397.2976

## **LOCAL CIVIL RULE 201.1 CERTIFICATION**

Under Local Civil Rule 201.1, the undersigned counsel for Plaintiff Seth Daniels hereby certifies that it seeks monetary damages in excess of $150,000 and other equitable relief, and therefore this action is not appropriate for compulsory arbitration.

Date: September 8, 2021

          **FEIN, SUCH, KAHN & SHEPARD, PC**
          Attorneys for Plaintiff, Seth Daniels

          By: */s/ Alan S. Golub*
          Alan S. Golub

          7 Century Drive, 2nd Floor
          Parsippany, New Jersey 07054
          Tel: 973.538.4700
          Fax: 973.397.2976